**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | | |
|---|---|---|
| **MAKIA SMITH** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CASE NO.: 1:13-cv-1352-MJG** |
| **BALTIMORE CITY POLICE DEPARTMENT, et al.,** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

# PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY OFFICERS PILKERTON, ULMER AND CAMPBELL

## INTRODUCTION

Officers William Pilkerton, Nathan Ulmer, and Kenneth Campbell (collectively, the "Movant Officers") of the Baltimore City Police Department ("BCPD") have moved to dismiss Count IV (Section 1983 Claim for Violation of Plaintiff's Rights Guaranteed by the Fourteenth Amendment to be Free from Deprivation of Property Without Due Process); Count V (Violation of Plaintiff's Freedom From Unreasonable Searches and Seizures Guaranteed by Article 26); Count VI (Violation of Plaintiff's Right Guaranteed by Article 24 to be Free From Deprivation of Property Without Due Process); and Count VII (Conversion) of Plaintiff's complaint. The remaining seven counts alleged against the Movant Officers are not affected by this Motion to Dismiss.

As explained below, the Movant Officers are not accused of "bystander liability" as they suggest to the Court in their moving papers, but rather are accused of actively participating in the deprivation of Plaintiff's property. Specifically, each of these officers helped deprive Plaintiff of

her cell phone when they ran at her, beat her and arrested her. All of the BCPD officers, including Officer Church who has filed an answer in this action (Doc #8), worked together to effectuate the city's policy or custom of using excessive force to discourage citizens from filming police activity. The Movant Officers' efforts to isolate Officer Church's conduct, the actual grabbing and smashing of Plaintiffs' telephone, from their own conduct should not be permitted, especially at this early stage of the litigation. The Motion to Dismiss should be denied.

## STATEMENT OF FACTS

On March 8, 2012, Plaintiff was on her way home, driving her car on Harford Road at approximately 4:00 p.m., with her two-year old daughter in the back seat. (Complt. ¶ 18.) Traffic became heavy and then stopped near the 2800 block of Harford Road. (*Id.* ¶ 19.) While stopped in traffic, Plaintiff saw police officers beating a young man near the side of the road. (*Id.* ¶ 20.) Plaintiff took out her cell-phone camera and began to photograph the beating and arrest of the young man. (*Id.*) Her filming in no way interfered with the flow of traffic or with the activities of the police. (*Id.*)

Officer Church of the BCPD saw Plaintiff filming the policy activity and ran at her yelling, "You want to film something bitch? Film this!" (*Id.* ¶ 21.) Scared, Plaintiff sat back down in her car. (*Id.*) Officer Church reached into the car and grabbed Plaintiff's cell-phone camera out of her hand, threw it to the ground and destroyed it by smashing it with his foot. (*Id.* ¶ 22.) He then pulled Plaintiff out of the car by her hair and began to beat her. (*Id.* ¶ 23.) Then the Movant Officers ran to Plaintiff's car and joined in the beating. (*Id.*) The Movant Officers and Officer Church then arrested Plaintiff. (*Id.*) The beating and the arrest were undertaken as part of Plaintiff's punishment for filming the officers. (*Id.* ¶ 24.) All the while, Plaintiff's two-

year old daughter watched, as did other nearby citizens. (*Id.* ¶ 23.) After placing Plaintiff under arrest, the officers threatened to transport Plaintiff's daughter to Social Services, despite Plaintiff's pleas that they not do so. (Id. ¶ 24.) The officers refused to call Plaintiff's mother so that she could come pick up her granddaughter, and ultimately, before she was taken away to the Central Booking and Intake Facility, Plaintiff had to seek the help of a witness to stay with her daughter at the scene until her grandmother could be notified and retrieve the child. (*Id.* ¶ 23-25.)

Plaintiff was charged with assaulting Officer Church in the second degree, resisting/interfering with arrest, failing to display a license on demand, willfully disobeying a lawful order of the police, and causing a vehicle to obstruct a roadway. (*Id.* ¶ 27.) She was incarcerated. (*Id.*) On January 3, 2013, a disposition of *nolle prosequi* was entered on each of these charges, as Officer Church failed to appear for Plaintiff's trial, twice. (*Id.* ¶ 29.)

Plaintiff's personal property, her cell phone, was intentionally destroyed in order to delete evidence of the BCPD officers beating the young man. (*Id.* ¶ 30.) Her car was taken from her and towed. (Id. at 28.) She was arrested without probable cause or legal justification and subjected to an unnecessary and unconstitutional use of force. (*Id.* ¶ 30.) The officers' conduct on March 8, 2012, resulted in multiple injuries to Plaintiff's face, neck and body that required her to seek medical treatment at Good Samaritan Hospital. (*Id.* ¶ 31.) Plaintiff also incurred financial damages to replace her cell phone and to retrieve her car from the impound lot. (*Id.* ¶ 28.)

The Movant Officers' conduct was part of a policy or custom established by the BCPD and its Commissioner to violate the constitutional rights of citizens by allowing the seizure of devices used for the recording of officers in public places and by giving permission to delete data

or destroy the devices, as well as the engagement of members of BCPD in acts of unjustified violence and false imprisonment against the citizens of Baltimore in violation of their constitutional rights. (*Id.* ¶ 33.)

**LEGAL STANDARD**

A party seeking dismissal under Federal Rule of Civil Procedure 12(b)(6) must show that, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro,* 178 F. 3d 231, 244 (4th Cir. 1999). All complaints must meet the "simplified pleading standard" of Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To determine whether a complaint meets this standard, a court must first divide genuine factual allegations, which are entitled to deference, from "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); accord *Francis v. Giacomelli,* 588 F. 3d 186, 193 (4th Cir. 2009). Next, the court must "assume [the] veracity [of the genuine factual allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679. A complaint will survive when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 678.

A court must "draw on its judicial experience and common sense" to determine whether a reasonable inference can be made, and thus whether the pleader has stated a plausible claim for relief. *Id.* at 679. In applying its experience and common sense, however, a court must accept all genuine factual allegations as true and construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2009). Moreover, where "the motion to dismiss involves 'a civil rights complaint, [a court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Hall v. Burney,* 2011 WL 5822176 at *1, Case No. 11-6566 (4th Cir. Nov. 18, 2011) (quoting *Edwards,* 178 F.3d at 244).

## <u>ARGUMENT</u>

### I. PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

Count IV alleges that the Movant Officers violated Plaintiff's rights under the Fourteenth Amendment of the United States Constitution to be free from the deprivation of her property by state or local governments without notice and an opportunity to be heard. (Compl. ¶ 58.) Count VI alleges the same deprivation under Article 24 of the Maryland Declaration of Rights. (Compl. ¶ 69.) Article 24 of the Maryland Declaration of Rights is construed *in pari materia* with the corresponding provision of the U.S. Constitution. *See e.g., Doe v. Dept. of Pub. Safety and Corr. Servs.*, 185 Md. App. 625, 636 (2009) (stating that Article 24 "is *in pari materia* with the Due Process Clause of the Fourteenth Amendment").

To succeed in an action alleging denial of due process in violation of a property interest, a plaintiff must demonstrate that he or she (1) had a protected property interest, (2) was deprived of that interest by the state, and (3) was afforded less procedure than was due. *Knapp v. Smethurst*, 139 Md. App. 676, 704 (2001) (citations omitted). The United States Supreme Court has emphasized that "state action affecting property must generally be accompanied by notification of that action...." *Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 484 (1988).

As the Maryland Court of Appeals echoed in *Roberts v. Total Health Care, Inc.*, 349 Md. 499, 509 (1998), "at the core of due process is the right to notice and a meaningful opportunity to be heard." *Id.* (citation omitted.)

Here, Plaintiff has alleged that she used her own cell phone to record an arrest on the side of Harford Road. (Compl. ¶ 20.) She has alleged that Officer Church grabbed her cell phone and smashed it with his foot, but the common sense implications of the Complaint also make clear that the Movant Officers participated in the deprivation of Plaintiff's property by beating her, arresting her, and impounding her vehicle. (Compl. ¶¶ 21-23.) Because of their actions, Plaintiff was unable to retrieve the broken pieces of her cell phone, which may have included the data she had just recorded. Additionally, their conduct was part of a policy or custom within the BCPD to discourage citizens from filming police activity that began with Officer Church's conduct but ended with their own. Finally, it goes without saying that Plaintiff was afforded no hearing or other form of procedure before the Movant Officers and Officer Church deprived her of her cell phone and vehicle.

A deprivation of property without due process claim is not limited to the actual physical taking of the property, but can also reach state actors who assist in the process. *See Rose v. Town of Jackson's Gap*, 952 F. Supp. 757, 764 (M.D. Ala. 1996). In *Rose*, two officers were on the scene while the plaintiff's boyfriend took her property. The plaintiff alleged that the officers effectuated an illegal seizure of her property without due process, not that they were responsible for bystander liability. *Id.* at 760. While the officers did not physically take the plaintiff's personal property, a claim for deprivation of property was nonetheless properly stated against them. *Id.* at 764.

Similarly, in *Gale v. Storti*, 608 F. Supp. 2d 629, 633 (E.D. Pa. 2009), the plaintiff stated

a claim for deprivation of property without due process where police officers, acting in concert with the plaintiff's landlord, prevented the plaintiff from retrieving his personal property from a restaurant he leased at the end of the lease term. There, while the private citizen was the one to padlock the door, thereby physically preventing the plaintiff from re-entering, a claim was also stated against the police officers for their participation in the process.

Similarly, in *Sherlock v. Stancato*, 2011 WL 1564111, at *6, Civil Action No. 10-11703-JGD (D. Mass. Apr. 22, 2011), the plaintiff accused an individual officer of depriving her of her personal property without due process, but it was unclear whether that individual officer specifically or another police officer physically took the items from the plaintiff. *Id.* at*6. The motion to dismiss the deprivation of property claim was denied because the plaintiff had alleged sufficient facts to put the defendant on notice of the claim against him. *Id.* at *6.

Here, the Movant Officers are accused of taking Plaintiff's cell phone without pre-deprivation process. The fact that Officer Church was the individual to physically grab the phone and smash it with his foot should not as a matter of law exonerate the Movant Officers for their role in the deprivation. As alleged in the complaint, immediately after Officer Church smashed the cell phone on the ground, the Movant Officers rushed over and began beating Plaintiff. After the beating, they arrested her, impounded her vehicle, and took her to the police station. Their conduct prevented Plaintiff from retrieving the remnants of her smashed phone. As the *Rose* Court concluded, there is no strict requirement that only the individual who actually takes the property can be held liable for deprivation of property. The Movant Officers who assisted in the deprivation should also be held liable.

The Movant Officers suggest that only "bystander liability" can apply to them. Respectfully, Plaintiff urges the Court to reject this straw-man argument. Unlike the police

officers in *Hodge v. Stephens*, 2013 WL 398870, at *14, Case No. 12-cv-01988-AW (D. Md. Jan. 31, 2013), on which the Movant Officers rely, the Movant Officers are not accused of bystander liability. They are not accused of merely standing behind Officer Church while he engaged in conduct that violated Plaintiff's rights. The Movant Officers are accused of actively interfering with Plaintiff's possessory interest in her cell phone without due process. Accordingly, the Movant Officers' discussion of bystander liability is inapplicable to this case.

To be clear, the Movant Officers are not defendants because of their inaction, but instead because of their actions. Officer Church grabbed the cell phone, but the Movant Officers took an active role in the fulfillment of the BCPD policy or custom by beating Plaintiff, preventing her from recovering the pieces of her cell phone, arresting her, threatening to send her daughter to Social Services, and charging her with criminal conduct.

Additionally, the Movant Officers' argument assumes that Officer Church was acting on his own when he ran at Plaintiff, grabbed her cell phone and smashed it. At this early point in the litigation, it is unclear whether any or all of the Movant Officers encouraged Officer Church to take and destroy the phone. Accordingly, while a claim for deprivation of property without due process has been stated in the complaint, it also should be allowed to proceed to see if additional facts can be uncovered during discovery further establishing the officer's liability for the violation. *See Yoemans v. Wallace*, 291 F. Supp. 2d 70, 74 (D. Conn. 2003) ("The determination of whether [the police officer's]actions rose to the level of state action is a factual determination that can only be assessed after discovery and the presentation of affidavits and other evidence."). For example, in this action, if discovery reveals that the Movant Officers instructed Officer Church to go over to Plaintiff and destroy her cell phone, there would be no questions that they too would properly share in the responsibility for this constitutional violation.

## II. PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR VIOLATION OF HER FREEDOM FROM UNREASONABLE SEARCHES AND SEIZURES

Count V asserts a violation of Plaintiff's freedom from unreasonable searches and seizures as guaranteed by Article 26 of the Maryland Declaration of Rights. Such a violation is "in *pari materia* with the prohibitions against unreasonable searches and seizures embodied in the Fourth Amendment of the federal constitution." *Solis v. Prince George's County*, 153 F. Supp.2d 793, 804 (D. Md. 2001). Accordingly, decisions interpreting unreasonable seizures within the meaning of the Fourth Amendment to the United States Constitution are instructive.[1]

A seizure of property within the meaning of the Fourth Amendment occurs when a government actor engages in a "meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (concluding seizure occurred where, during eviction of trailer from trailer park, trailer was pulled from moorings in ground, towed onto the street, and later hauled to a neighboring property). The destruction or complete deprivation of one's personal property plainly constitutes a seizure subject to constitutional protection. *Altman v. City of High Point, N.C.,* 330 F. 3d 194, 205 (4th Cir. 2003) (finding permanent deprivation and thus seizure of effects where animal control shot and killed plaintiff's dogs).

Preventing an individual from retrieving their property can constitute a violation of the Fourth Amendment. *Gale v. Storti,* 608 F. Supp. 2d 629, 633 (E.D. Pa. 2009). In *Gale*, the police officer was accused of preventing the plaintiff from re-entering a restaurant he had leased in order to retrieve his personal property. The fact that the police did not have plaintiff's

---

[1] Plaintiff's federal claim for unreasonable search and seizure is presented in Count III of the complaint, which has not been challenged by the Movant Officers. Instead, only the state claim is challenged. Presumably, this is because Count III includes allegations related to Plaintiff's detention, assault, and arrest (Complt. ¶ 53), while Count V refers only to the warrantless search, seizure and destruction of Plaintiff's telephone-camera. (Complt. ¶ 65.)

property was irrelevant, their act of preventing the plaintiff from retrieving the property was a sufficient interference with the plaintiff's possessory interests. *Id.* Moreover, it did not matter that a different person (a non-police officer) actually changed the lock on the restaurant, preventing the plaintiff from re-entering. The court did not so closely parse the constitutional violation such that only the actor physically preventing plaintiff from reaching his property was liable. The fact that the defendant officer was present during the incident was sufficient to state a claim against him. *Id.*

Here, the Movant Officers caused a "meaningful interference" with Plaintiff's possessory interest in her property when they began beating her and arrested her while the remains of her cell phone remained on the ground. If Officer Church had smashed the phone and walked away, Plaintiff could have picked up the pieces and perhaps the data contained therein would have been intact. Instead, she was beaten, arrested, and whisked away from the scene, leaving the remains of her phone on the side of Harford Road. Moreover, as stated above, at this early stage of the litigation, it would be premature to foreclose Plaintiff's ability to conduct discovery of the Movant Officers full role in the "meaningful interference" with Plaintiff's possessory interest in her cell phone. *See Yoemans v. Wallace*, 291 F. Supp. 2d 70, 74 (D. Conn. 2003).

## III. THE MOVANT OFFICERS EXERCISED DOMINION OVER PLAINTIFF'S PROPERTY, THEREBY ESTABLISHING A CLAIM FOR CONVERSION

Under Maryland law, the tort of conversion is not simply the physical taking of property, but also includes the wrongful exercise of dominion over property. *Kalb v. Vega*, 56 Md. App. 653, 666 (1983). Conversion is a "'distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560, 731 A.2d 957 (1999) (quoting *Interstate Ins. Co., v. Logan, supra*, 205 Md. at 588-89, 109 A.2d 904). The exercise of dominion "may involve nothing more

than the improper withholding of the property from the rightful owner...." *Id.* (citations omitted.) For example, in *Kalb*, the defendant's refusal to return shares of stock to the plaintiff was considered a conversion. *Id.* Similarly, a conversion can occur when a person is prevented from recovering his or her property. *Kirby v. Porter*, 144 Md. 261, 125 A. 41, 42-43 (1923). In *Kirby*, a tenant living in Ms. Kirby's home was deprived of his property when Ms. Kirby refused "by force and violence" to let him re-enter the house to recover his belongings. *Id.* at 42-43.

Here, it is a reasonable inference that the Movant Officers's conduct necessarily prevented Plaintiff from recovering the pieces of her cell-phone that lay on the ground, including but not limited to, any memory device that may have still included the footage Plaintiff had just filmed. By depriving Plaintiff of the ability to recover her property, the Movant Officers committed conversion. The motion to dismiss Count VII should be denied.

## CONCLUSION

For the foregoing reasons, the Movant Officers' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

Date: July 8, 2013

*/s/ James B. Astrachan*

James B. Astrachan, Bar No. 03566
Christopher J. Lyon, Bar No. 27443
Elizabeth A. Harlan, Bar No. 18285
ASTRACHAN GUNST THOMAS, P.C.
217 East Redwood Street, Suite 2100
Baltimore, Maryland 21202
Telephone: 410.783.3550
Facsimile: 410.783.3530
jastrachan@agtlawyers.com
clyon@agtlawyers.com

*/s/ Lawrence S. Greenberg*
Lawrence S. Greenberg, Bar No. 23642
GREENBERG LAW OFFICE
6 E. Biddle Street
Baltimore, Maryland 21202
Telephone: 410.539.5250
Facsimile: 410.625.7891
larry@greenberglawyers.com

*Attorneys for Plaintiff*