```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND

MAKIA SMITH                        *

           Plaintiff               *

           vs.                     *    CIVIL ACTION NO. MJG-13-1352

BALTIMORE CITY POLICE              *
DEPARTMENT et al.
                                   *
           Defendants
*     *     *     *     *     *     *     *     *
```

## MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendants Church, Pilkerton, Ulmer, and Campbell's Motion for Partial Summary Judgment [Document 64] and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

I.   BACKGROUND

   A.   The Assumed "Facts"

The Defendants have a version of the facts that is starkly different from Plaintiff's version. However, the Court is not now making factual findings. The Court must, and will, assume the facts to be as Plaintiff contends to the extent there is evidence from which a reasonable jury could find those facts.

Thus, it is assumed that on March 8, 2012, Plaintiff Makia Smith ("Plaintiff") was driving home along Harford Road in

Baltimore, Maryland when, due to the stopping of other vehicles, she was forced to stop her vehicle and remain stopped. While stopped, Plaintiff witnessed police officers from the Baltimore City Police Department ("BCPD"), not parties to the instant case, beating a young male while attempting to arrest him.

Plaintiff began filming the arrest and beating of the young male with her cell phone camera.

### 1.   Defendant Church

Upon realizing that Plaintiff was filming the incident of police brutality, Defendant Church ("Church"), in retaliation for Plaintiff's exercise of her First Amendment right to film police action in public, ran over to Plaintiff's car, grabbed the telephone, and smashed the telephone with his foot, destroying it. Moreover, Church, although well aware that Plaintiff's car was not disrupting traffic and that she was unable to move her vehicle, shouted an order for her to move the vehicle, an order that he knew could not be obeyed because of the traffic conditions. Church's order was intended to create a pretext of probable cause to justify arresting Plaintiff. Moreover, Church, in effecting the arrest, used excess force against Plaintiff.

Plaintiff was charged with several criminal and traffic offenses in connection with the incident, including second

degree assault against Church and "causing a vehicle to obstruct a free vehicle passage of a roadway." Am. Compl. ¶ 27. "On January 3, 2013, a disposition of nolle prosequi was entered for all of the criminal and traffic charges filed by Officer Church against Plaintiff." Id. ¶ 29.

As a result of the incident, Plaintiff obtained necessary medical treatment for injuries to her face, neck, and body.

2. The Other Officers

Defendants Pilkerton, Ulmer, and Campbell, Baltimore City Police Officers ("the Other Officers"), were on the scene at the time of the incident in question, and, it can be assumed, observed Plaintiff filming other police officers engaging in police misconduct.

B. Procedural Posture

In the Amended Complaint, Plaintiff presents the following claims against Officers Church, Pilkerton, Ulmer, and Campbell[1]:

---

[1] As well as certain claims against the Baltimore City Police Department ("BCPD") and Commissioner Anthony W. Batts ("Batts") in his official capacity (collectively "the BCPD Defendants").

| CLAIM | COUNTS | CHURCH | PILKERTON | ULMER | CAMPBELL |
|---|---|---|---|---|---|
| Free speech retaliation | I, II | ✓ | ✓ | ✓ | ✓ |
| Unlawful arrest | III, IX, X | ✓ | ✓ | ✓ | ✓ |
| Excess force | XII, XIII | ✓ | ✓ | | ✓ |
| Battery | VIII | ✓ | ✓ | | ✓ |
| Intentional Infliction | XI | ✓ | ✓ | ✓ | ✓ |
| Cell phone deprivation | IV, V, VI, VII | ✓ | | | |

On September 29, 2014, the Court permitted the Other Officers (not Church) to file "simplified motions for summary judgment" merely identifying the claims as to which they sought summary judgment. Plaintiff was required to respond, and the movants would be given an opportunity to file a reply if necessary. [Document 59].

The instant "simplified" Motion was filed by all of the Officers, including Church. On October 14, 2014, the Court denied the instant Motion as filed by Church, stating:

> As a procedural matter, the summary judgment motion filed by Officer Church lacks an adequate memorandum in support. Defendant Church, as distinct from the other Officer Defendants, was not given leave to file a simplified summary judgment motion. As a substantive matter, there are genuine issues

4

>  of material fact that prevent Defendant Church from being granted summary judgment.

[Document 67] at 2. The Court provided, however, that Church could "seek reconsideration if there is a grant of summary judgment as to the Other Officer Defendants that should be deemed applicable to him."[2] Id. On November 12, 2014, Church filed a Notice of [Interlocutory] Appeal from the denial of his summary judgment motion.

By the instant Motion, Officers Pilkerton, Ulmer, and Campbell seek summary judgment with regard to all claims against them.

II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] In the same letter Order denying the instant Motion as filed by Church, the Court denied Defendants Baltimore City Police Department and Commissioner Anthony Batts' Motion for Summary Judgment [Document 65] without prejudice as premature. The Court stated that "if it is determined, on summary judgment or at trial, that Plaintiff does not have a valid claim against any Officer Defendant, [the BCPD Defendants] will be entitled to summary judgment. However, if Plaintiff does prevail, the case will proceed to the Monell claim phase." [Document 67] at 3.

5

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. <u>See, e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991).

III. <u>DISCUSSION</u>

    A.  <u>Free Speech and Related Claims (False Arrest and Battery) – Counts I-III, VIII-X</u>

Plaintiff's claim is, in essence, that Church and the Other Officers retaliated against her for exercising her First Amendment free speech right to film police action (specifically, misconduct) in public. The retaliation consisted of Church's destroying her cellphone and Church's, as well as the Other Officers', arresting her without probable cause.

To establish a free speech retaliation claim, Plaintiff must prove that:

- Her speech was protected – <u>i.e.</u>, she was exercising a First Amendment right;

6

- A defendant took retaliatory action against her for exercising this right that adversely affected her constitutionally protected speech; and

- A causal connection exists between her protected speech and the retaliatory action.

See, e.g., Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000).

The evidence would permit a reasonable jury to find that Plaintiff was filming police misconduct in a manner that was not interfering with police activity – other than, of course, to ensure that there was evidence to establish the misconduct of the officers arresting the young male.  Each of the Other Officers could be found to have observed the filming, to have observed Church's destruction of the cellphone, and to have believed that Church was seeking to arrest Plaintiff without genuine probable cause.  The Other Officers each assisted Church in arresting Plaintiff.  And, the Court will assume that the evidence is sufficient to permit a reasonable jury to find that one, or all of the Other Officers, assisted in the arrest of Plaintiff knowing that Church was effecting an arrest without probable cause.

Nevertheless, the Court finds the Other Officers entitled to qualified immunity with regard to their using reasonable force to assist Church in arresting Plaintiff.  As stated by the

7

United States Court of Appeals for the Fourth Circuit in <u>Meyers v. Baltimore County, Maryland</u>, 713 F.3d 723 (4th Cir. 2013):

> [A]lthough a plaintiff may prove that an officer has violated certain constitutional rights, the officer nonetheless is entitled to qualified immunity if a reasonable person in the officer's position "<u>could have failed to appreciate</u> that his conduct would violate those rights." <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 261 (4th Cir.1991) (citation and internal quotation marks omitted).

<u>Id.</u> at 731 (emphasis added).

Of course, Plaintiff's right to be free from an arrest without probable cause was well established. And, there is no doubt that the evidence is sufficient for a reasonable jury to find that Church violated Plaintiff's constitutional rights by arresting her in retaliation for her filming police misconduct.

However, there is insufficient evidence to establish that any of the Other Officers assisted Church for a retaliatory motive, rather coming to the aid of a fellow officer who was trying to effect an arrest. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." <u>Saucier v. Katz</u>, 533 U.S. 194, 208 (2001), <u>receded from on other grounds by Pearon v. Callahan</u>, 555 U.S. 223 (2009)

Thus, a reasonable person in the circumstances of the Other Officers <u>could have believed</u> that he would not be violating Plaintiff's constitutional rights by utilizing reasonable force

8

Case 1:13-cv-01352-JFM   Document 77   Filed 12/19/14   Page 9 of 15

to assist in ending the incident – even though Church was effecting an illegal arrest – if the only alternative was to stand by and let Church and the Plaintiff "fight it out among themselves."

"The denial of qualified immunity for [the Other] Officer[s] would mean that an assisting officer must assess both the primary rationale for probable cause and the factual and legal rationale that support it.  This Court has previously rejected this proposition."[3]  Swagler v. Sheridan, No. CIV.A. RDB-08-2289, 2011 WL 2635937, at *10 (D. Md. July 5, 2011).

---

[3]    But see Carter v. Jess, 179 F. Supp. 2d 534, 544-45 (D. Md. 2001) ("Plaintiff has cited no authority for the proposition that an officer must make an independent assessment of probable cause before assisting other officers with what appears to be a difficult or potentially dangerous arrest that is already underway.  Indeed, such a requirement could yield perilous results for officers whose colleagues are deterred from assisting them.  Plaintiff asserts instead that because of the short time between Officer Boone's initial encounter with Plaintiff, and Plaintiff's arrest by Officers Jess and Waite, that 'Defendant Boone must have known that at no time during this incident was Mr. Carter a candidate for a disorderly conduct charge.'  Plaintiff's argument fails to address the fact that Officer Boone did not witness Plaintiff's conduct immediately prior to the arrest, and had no personal knowledge of the arresting officers' basis for the arrest.  Officer Boone's liability turns not on whether the arrest was actually based on probable cause, but rather, 'what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards.' ['[H]owever, officers with knowledge that their fellow officers are engaged in unlawful activity, including a wrongful arrest, should not assist in it.  There is no evidence that Officer Boone had such knowledge in this case.']").

9

Accordingly, the Court finds that the Other Officers are entitled to qualified immunity with regard to Plaintiff's claims for free speech retaliation, false arrest, and battery (as based upon the use of reasonable force[4]) in Counts I, II, III, VIII, IX, and X.

B. <u>Excess Force Claim – Counts VIII, XII, XIII</u>

As stated by the Fourth Circuit:

> Under Maryland law, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." <u>Nelson v. Carroll</u>, 355 Md. 593, 735 A.2d 1096, 1099 (1999). Although Maryland police officers are entitled to qualified immunity when performing their official duties, they lose such protection when they commit "an intentional tort or act [ ] with malice." <u>DiPino v. Davis</u>, 354 Md. 18, 729 A.2d 354, 370 (1999).

<u>Young v. Prince George's Cnty., Maryland</u>, 355 F.3d 751, 759 (4th Cir. 2004).

---

[4] The Court is granting qualified immunity to Pilkerton and Campbell on the battery claim to the extent that claim is based upon their merely having touched Plaintiff (with reasonable force) while assisting Church in effecting the arrest. <u>Cf. Bixler v. Harris</u>, No. CIV. WDQ-12-1650, 2013 WL 2422892, at *8 (D. Md. June 3, 2013) ("'False imprisonment, false arrest, and assault and battery (<u>when the force used is not excessive</u>) can only occur when there is no legal authority or justification for the arresting officer's actions.'" (quoting <u>Williams v. Prince George's Cnty.</u>, 685 A.2d 884, 898 (Md. Ct. Spec. App. 1996)). Qualified immunity is not granted on Plaintiff's battery claim based upon a use of excess force.

Put more simply, "[t]he right to arrest . . . does not give rise to a privilege to use an unreasonable amount of force." Estate of Saylor v. Regal Cinemas, Inc., --- F. Supp. 3d ---, No. CIV.A. WMN-13-3089, 2014 WL 5320663, at *11 (D. Md. Oct. 16, 2014).

Plaintiff has presented evidence adequate to permit a reasonable jury to find that one of the Other Officers, Campbell, used excess force in participating with Church in her arrest. Plaintiff testified that one of the Other Officers pulled her left arm to the small of her back and then "pulled it all the way up almost like they were going to break it," and that the same officer said "Have you had enough yet?" Smith Dep. 60:13-61:4. Campbell testified that he was the officer who pulled Plaintiff's left arm to the small of her back and that he did not know if any other officer – other than he and Church – "even had hands on [Plaintiff]." Campbell Dep. 28:13-22. This is sufficient evidence from which a reasonable jury could find that Campbell utilized excess force in the arrest of Plaintiff.

Accordingly, on Plaintiff's excess force claim – and on the battery claim as it relates to the use of excess force - summary judgment shall be denied to Campbell but granted as to Pilkerton.

11

C.      Intentional Infliction of Emotional Distress - Count XI

To establish a cause of action for intentional infliction of emotional distress ("IIED") under Maryland law, a Plaintiff must establish four essential elements:

> (1) The conduct was intentional or reckless;
>
> (2) The conduct was extreme and outrageous;
>
> (3) There was a causal connection between the wrongful conduct and the emotional distress; and
>
> (4) The emotional distress was severe.

Arbabi v. Fred Meyers, Inc., 205 F. Supp. 2d 462, 465-66 (D. Md. 2002) (citations and quotation marks omitted); see also Batson v. Shiflett, 602 A.2d 1191, 1216 (Md. 1992).

Plaintiff has failed to present evidence adequate to establish the fourth element, emotional distress that is severe as that term is defined in Maryland law.

"Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." Arbabi, 205 F. Supp. 2d at 466 (citations and quotation marks omitted).

Thus, to establish the fourth element of an IIED claim, Plaintiff must prove that the emotional distress inflicted was of such severity that she was unable to function or tend to

necessary matters. As stated by the Court of Appeals of Maryland in Hamilton v. Ford Motor Credit Co., 502 A.2d 1057 (Md. 1986):

> To sustain an action for intentional infliction of emotional distress . . . one must suffer an emotional response so acute that no reasonable person could be expected to endure it. One must be unable to function, one must be unable to tend to necessary matters.

Id. at 1064 (citations omitted).

Plaintiff here, like the plaintiff in Hamilton, simply produced no evidence that she could not function or tend to her everyday affairs. "The tale of her frustration and anguish was not one of pain so acute that no reasonable person could be expected to endure it." Id.

Accordingly, all of the Officer Defendants are entitled to summary judgment on Plaintiff's IIED claim.

IV.  CONCLUSION

   Accordingly:

   1.  Defendants Church, Pilkerton, Ulmer, and Campbell's Motion for Partial Summary Judgment [Document 64] is GRANTED IN PART.

       a.  Officer Pilkerton is granted summary judgment with regard to all claims against him in Counts I, II, III, VIII, IX, X, XII, and XIII.

       b.  Officer Ulmer is granted summary judgment with regard to all claims against him in Counts I, II, III, IX, and X.

       c.  Officer Campbell is granted summary judgment with regard to all claims against him in Counts I, II, III, IX, and X.

       d.  All of the Officer Defendants (including Church) are granted summary judgment with regard to all claims against them in Count XI.

   2.  There now remain for trial in the first (pre-Monell) phase of the case:

       a.  Plaintiff's claims in Counts I, II, III, VIII, IX, and X against Defendant Church.

       b.  Plaintiff's claims in Counts VIII, XII, and XIII against Defendants Church and Campbell.

       c.  Plaintiff's claims in Counts IV, V, VI, and VII[5] against Defendant Church.

---

[5]  The Court has not yet determined whether all of these claims, or some of them, can be resolved prior to trial.

> 3. Plaintiff shall arrange a conference, to be held prior to January 7, 2015 to discuss:
>
>     a. The effect on claims against the BCPD Defendants of the grant of qualified immunity to Defendants Pilkerton, Ulmer, and Campbell.
>
>     b. Setting a trial date for the pre-<u>Monell</u> phase.

SO ORDERED, on <u>Friday, December 19, 2014</u>.

<div style="text-align:right">
____/s/_____<br>
Marvin J. Garbis<br>
United States District Judge
</div>